The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner George T. Glenn, II, and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award with the exception of attorneys' fees. Accordingly, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner, with modifications.
***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pretrial Agreement, as
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter of this action. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the defendant-employer and the plaintiff employee at all relevant times.
3. Plaintiff's average weekly wage will be determined from a Form 22.
4. The workers' compensation carrier on risk at the relevant times was Yasuda Fire Marine Insurance Company.
5. The date of the alleged injury by accident was April 2, 1997.
6. The issues to determined from hearing are:
a) Whether plaintiff suffered a compensable injury by accident to his back and ankle on April 2, 1997
b) If so, what, if any, benefits is plaintiff entitled to receive
***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 32 years old at the time of this hearing before the Deputy Commissioner. He had obtained his GED. Plaintiff worked for defendant-employer as a general laborer.
2. Defendant-employer is in the business of drywall and other related construction work. Plaintiff worked at a job site for defendant-employer from February 10, 1997, to April 30, 1997, at Fort Bragg, NC, performing general labor.
3. On April 2, 1997, while plaintiff was walking across a field on the job site he stepped into a hole while carrying some materials and twisted his right ankle. He did not report this incident at the time and he continued to work. Later the same day as plaintiff was working in one of the apartment units under construction removing excess mud that was being sprayed onto the ceiling, he lost his footing and fell down a flight of stairs injuring his back.
4. Plaintiff reported these incidents to his supervisor. Plaintiff did not seek immediate medical attention for either of his injuries.
5. Plaintiff did not report to work on the next several days following his injuries and he reported to his supervisor that he was in too much pain to work as a result of his injury. Plaintiff was instructed to seek medical attention at Highsmith-Rainey Hospital.
6. Plaintiff reported to the hospital emergency room on April 7, 1997, where he was examined by Dr. Otto Rogers. Plaintiff told Dr. Rogers that he was suffering from pain in his back and ankle. Dr. Rogers diagnosed plaintiff's condition as back strain and foot pain. Dr. Rogers released plaintiff to return to work without any restrictions.
7. Plaintiff attempted to return to work but was unable to work due to pain and other difficulties he was experiencing. Plaintiff was next seen and treated by Dr. Ali Ergun, a chiropractor.
8. Dr. Ergun initially saw plaintiff on April 30, 1997. Plaintiff's major complaints at the time he saw Dr. Ergun was low back and right ankle pain. Plaintiff told him that he had injured himself on April 2, 1997, while at work. Dr. Ergun noted that plaintiff was limping when he entered for treatment and when he asked about plaintiff's right knee, plaintiff told him that he had injured it on April 2, 1997 as well, but that it had improved since the date of his injury. Dr. Ergun noted that plaintiff's low back was extremely tender and that his right ankle was swollen.
9. Dr. Ergun caused back x-rays to be made. They did not show any fractures of plaintiff's back, so he began a course of conservative treatment of plaintiff's condition. Plaintiff was unable to work from April 30, 1997 through June 6, 1997. From and after June 7, 1997, plaintiff was able to perform light duty.
10. Dr. Ergun opined, and the Full Commission finds as a fact, that plaintiff will never be able to return to the kind of work he was performing at the time of his injuries.
11. Prior to his employment with defendant-employer, plaintiff was under the care of Dr. James H. Askins. Dr. Askins was treating plaintiff in relation to difficulties plaintiff was having with both of his hands and arms. Plaintiff had undergone hand surgery due to carpal tunnel syndrome and also surgery on his elbow. Dr. Askins had removed plaintiff from work as a painter, and it was his opinion that plaintiff would not have been able to return to work as a painter or any other construction job. He was surprised when he learned that plaintiff had been working as a general laborer on a construction job. Dr. Askins noted that he knew that plaintiff wanted to return to work and support himself and that plaintiff had to be in a great deal of pain as he worked the construction job. He was treating plaintiff in an effort to get him into a different kind of work due to plaintiff's inability to return to manual labor.
12. Dr. Askins saw and treated plaintiff in reference to his hand and arm conditions on May 19, 1997, at which time plaintiff indicated to him that he had injured his back and ankle on the construction job on April 2, 1997. He told plaintiff that he could not treat him for those injuries and that he needed to seek medical attention from another doctor.
13. Plaintiff has not been able to return to work as a result of his injuries of April 2, 1997, and he is still being treated by Dr. Ergun. Dr. Ergun's medical bill has not been paid. Plaintiff has not reached maximum medical improvement at this time.
14. Defendant-employer hired and was paying plaintiff at the time of his injury $8.00 per hour. Plaintiff worked eight hours per day, six days per week. Plaintiff's average weekly wages were $384.00 at the time of his injury by accident on April 2, 1997, yielding a compensation rate of $256.00. Although his rate of pay was $8.00 per hour, defendant-employer deducted $1.00 per hour, improperly, as contribution toward its workers compensation premium, in violation of Section 97-6 of the North Carolina General Statutes. This improper deduction occurred during the period from February 10, 1997 through April 26, 1997.
15. Plaintiff had not returned to work for defendant-employer, but had returned to work for another employer earning $6.50 per hour as of May 25, 1997.
16. With respect to the back injury, Dr. Ergun, a chiropractor, was competent to testify that the fall down the stairs while on the job on April 2, 1997, was the proximate cause. With respect to the ankle injury, the lack of any symptoms prior to the twisting of the ankle while stepping into the hole on April 2, 1997, plus the description of the ankle after the twisting is sufficient for the Full Commission to conclude on its own that the April 2, 1997, incident was the proximate cause of the ankle injury.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained two compensable injuries by accident on April 2, 1997, while in the course and scope of his employment with defendant-employer. Plaintiff's injuries were to his back and to his right ankle.
2. Plaintiff is entitled receive temporary total or temporary partial disability benefits from April 22, 1997 through the date of this Opinion and Award and continuing until he returns to work in a position earning the same or greater wages than he was earning at the time of his compensable injury by accident, with benefits not to exceed 300 weeks from the date of injury.
3. Plaintiff is entitled to the payment of the medical expenses incurred for the treatment of the injuries he sustained, and any further treatment that tends to cure, give relief and/or lessen plaintiff's period of disability.
4. Plaintiff is entitled to be reimbursed by defendants for the money that was withheld from his pay to cover workers' compensation benefits.
5. Plaintiff's average weekly wages at all relevant times herein were $384.00, yielding a compensation rate of $256.00.
6. Plaintiff is still in need of receiving medical treatment for the treatment of the injuries he sustained on April 2, 1997, while in the course and scope of his employment with defendant-employer.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to counsel fees hereinafter approved, defendants shall pay to plaintiff temporary total disability benefits at the rate of $256.00 per week for the period from April 30, 1997, through May 25, 1997. Thereafter, defendant-employer shall pay plaintiff the difference between what he is earning and his average weekly wages at the time of injury by accident, until such time as plaintiff is earning the wages he was earning at the time of the accident or he has exhausted his benefits under the Workers' Compensation Act. All accrued compensation shall be paid in one lump sum.
2. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury when bills for same have been submitted to the carrier, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability. This includes the bills for the treatment rendered by Dr. Ali Ergun.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation approved and awarded for plaintiff is approved and allowed for plaintiff's counsel. The attorney's fees shall be paid directly to plaintiff's attorney.
4. Defendants shall reimburse plaintiff the $1 per hour that was withheld from his check for workers' compensation insurance. Defendants shall also pay plaintiff the legal interest on said funds from the date they were first withheld until they have been paid in full. Defendants shall also pay interest on the compensation awarded to plaintiff from the date of the hearing before the Deputy Commissioner until paid. Interest is not due on any compensation payments that are paid when due.
5. Defendants shall pay the costs of this action.
This 11th day of January 2000.
S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER